UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATE OF AMERICA

            v.                                   6:14-cr-06116-EAW-JWF

                                                NOTICE OF MOTION

JODIA CAMPBELL
               Defendant
_____

| | |
|---|---|
| MOTION BY: | Avik K. Ganguly, Esq.<br>Ganguly Brothers, PLLC<br>Attorney for Jodia Campbell |
| DATE, TIME & PLACE: | On January 15, 2015 at 10:00 AM, before the Honorable Jonathan W. Feldman, 2330 U.S. Courthouse, Rochester, New York |
| SUPPORTING PAPERS: | Affirmation of Avik K. Ganguly, affirmed on December 20, 2014, the attachments hereto, and all prior proceedings had herein |
| RELIEF REQUESTED: | An Order granting the relief requested herein. |

Dated: December 21, 2014
Rochester, NY

                                /s/Avik K. Ganguly, Esq.
                                _____
                                Avik K. Ganguly, Esq.
                                Ganguly Brothers, PLLC
                                Brighton Campus Park
                                2024 West Henrietta Road, Suite 3D
                                Rochester, NY 14623
                                585-232-7747
                                avik@gangulylaw.com

To:
Tiffany Lee, AUSA

Robert Smith, Esq
Attorney for Jennifer Miller

Paul D. Fuller
Attorney for Laree Greggs

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATE OF AMERICA

        v.                                                   6:14-cr-06116-EAW-JWF
                                           AFFIRMATION

JODIA CAMPBELL
                Defendant
_____

      Avik K. Ganguly, Esq., attorney for the defendant herein, affirms as follows:

      1.      I am an attorney licensed to practice law in the State of New York and in the United States District Court for the Western District of New York, and I represent the defendant, Jodia Campbell.

      2.      I am familiar with this case by reason of my investigation of this matter, conversations with my client and others, and my review of the discovery material provided to date by the government.

      3.      This affirmation is submitted in support of various forms of relief requested herein, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

Table of Contents

Page

I.      INTRODUCTION………………………………………………….    4

II.     PRODUCTION OF GIGLIO MATERIAL……………………………    5

III.    BRADY MATERIAL………………………………………………….    7

IV.     JENKS MATERIALS………………………………………………    13

V.      MOTION FOR SEVERANCE…………………………………...    15

VI.     INFORMANTS IDENTITIES…………………………………………    17

VII.    PRESERVATION OF ROUGH NOTES……………………………    21

VIII.   DISCLOSURE OF EVIDENCE PURSUANT TO FEDERAL
        RULES OF EVIDENCE 404(b), 608 AND 609………………………...    22

IX.     DEMAND FOR BILL OF PARTICULARS………..……………    24

X.      DISMISSAL OF THE INDICTMENT……………………………..    28

XI.     DISCOVERY AND INSPECTION ……………………………….    31

XII.    SUPPRESSION OF STATEMENTS………………………..…    40

XIII.   MOTION FOR CONSPIRACY HEARING………………….…    41

XIV.    IN CAMERA REVIEW OF PRE-SENTENCE REPORT OF
        GOVERNMENT WITNESSES………..………………………….    42

XV.     LEAVE TO MAKE FURTHER MOTIONS………………….…..    43

## I. INTRODUCTION

4.      Jodia Campbell, along with Jennifer Miller and Laree Greggs, a.k.a. "LA" were charged in a 6 count Superseding Indictment; the defendant, Jodia Campbell was charged with counts 1-4 as follows:

**Count 1** knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown to the Grand Jury, to recruit, entice, harbor, transport, provide, obtain, and maintain by any means, in and affecting interstate commerce, persons under the age of 18 years, knowing and in reckless disregard of the fact that the persons had not attained the age of 18 years and that the persons would be caused to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)(1) and 1591(b)(2), all in violation of Title 18, United States Code, Section 1594(c).

**Count 2** knowingly recruit, entice, harbor, transport, provide, obtain and maintain by any means, in and affecting interstate commerce, Victim 1, a person known to the Grand Jury, a person under the age of 18 years, knowing and in reckless disregard of the fact that Victim 1 had not attained the age of 18 years and that Victim 1 would be caused to engage in a commercial sex act., all in violation of Title 18, United States Code, Sections 1591(a)(1), 1591(b)(2) and 2.

**Count 3** knowingly transport Victim 1, a person known to the Grand Jury, who had not attained the age of 18 years, in interstate commerce from the State of New York to the State of New Jersey, with intent that such individual engage in prostitution and in sexual activity for which any person can be charged with a criminal offense, all in violation of Title 18, United States Code, Sections 2423(a) and 2.

**Count 4** knowingly transport Victim 2, a person known to the Grand Jury, in interstate commerce from the State of New York to the State of New Jersey, with intent that such individual engage in prostitution and in sexual activity for which any person can be charged with a criminal offense, all in violation of Title 18, United States Code, Sections 2421(a) and 2.

5.     Pursuant to Fed. R. Crim Proc. 12(b)(4)(B), the defendant herein requests that the government provide notice as to the specific evidence it intends on utilizing directly against the defendant at trial.  The defendant seeks notice of the potential use of evidence at trial of, but not limited to, identification procedures and/or statements so that proper motions seeking suppression of same can be brought in a timely manner before trial.

## II. PRODUCTION OF GIGLIO MATERIAL TO REVEAL ANY AGREEMENT, CONCESSION OR GRANT OF IMMUNITY

1. The defendant moves this Court to require the government to reveal any agreement, concession, or grant of immunity and its terms, whether the same be formally granted or informally granted, by the United States of America to any witness or prospective witness in this case. This motion refers, but is not limited, to, the following:

a. Full disclosure of all immunity transaction with witness, informant, participant, prospective witnesses, including co-defendants in the present case or prior investigations, pursuant *to Giglio v. United States*, 405 U.S. 105 (1979).

b. Full text and/or substance of any initial plea bargain, offer or agreement of leniency, in return for cooperation on this case including the information following:

i. The charges (state or federal), which might be brought against them or any member of their family:

ii. The degree of cooperation required of the said person even if beyond the limits of the subject matter of this indictment:

iii. The terms and the conditions of any agreement to dismiss or reduce charges or not bring charges against an alleged co-conspirator or co-defendant, or anyone else involved in the investigation which preceded this investigation who could have been a co-conspirator or co-defendant, including any confidential informant.

2. The defendant requests that this Court issue an Order requiring the government to reveal any agreement, concession or grant of immunity, whether formally or informally granted, by the United States to any witness or potential witnesses in this case. The defendant also requests that the terms of any agreement, concession, or grant of immunity be revealed as well. The defendant needs the opportunity to prepare to challenge the credibility of these witnesses.

3. The disclosure of the requested information falls within the ambit of the Supreme Court case Giglio v. United States, 405 U.S. 150 (1972). See United States v Bagley, 473 U.S. 667 (1985).

4. When the reliability of a given Witness could be determinative of guilt or innocence, disclosure of evidence affecting credibility should be within a general rule requiring disclosure of such beneficial treatment of witness. In Giglio, 405 U.S. 150 (1972), the Supreme Court found a Brady-type due process violation by the government's suppression of evidence of a leniency agreement with an accomplice witness.

Specifically, the Supreme Court stated that the accomplice witness' "credibility as a witness was . . . an important issue in the case, and evidence of understanding or agreement as to future prosecution would be relevant to his credibility and the jury was entitled to know of it." Thus, the suppression by the Government of such evidence violates due process. Giglio, 405 U.S. 150.

### III. *BRADY* MATERIAL

1. The government no doubt understands its responsibilities under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. Nevertheless, the undersigned respectfully reminds the government of its *Brady* obligations under Kyles v. Whitley, 514 U.S. 419, 437-38 (1995), including but not limited to the duties of the government's attorney to ascertain whether there exists exculpatory and/or impeachment materials in the possession of, and/or pertinent to, local law enforcement officers involved in the investigation resulting in the instant action.

2. In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court "put responsibility for compliance [with *Brady*] squarely on the prosecutor." *United States v. McVeigh*, 954 F. Supp. at 1441, 1449 (D. Colo. 1997). "[T]he individual prosecutor has a duty to learn of any favorable evidence known to others acting in the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437 (emphasis added). Although "[t]here is no established procedure for the due process disclosure required by Brady[,] [t]he information should be given to the defense as it becomes known to the government." *McVeigh*, 954 F.Supp. at 1449. The government's lawyer(s) "must inform themselves about everything that is known [by police agencies involved in the investigation]. That is their burden under *Brady*." *Id*. at 1450 (emphasis added). Burdensomeness is not a

proper objection to compliance:

The failure to comply with a constitutional command to present evidence fairly at trial is not excused by any inconvenience, expense, annoyance or delay. *Id*. Brady "material" includes "anything said or written, without regard for its reliability, credibility or provability," and "[d]ue process requires the government lawyers to resolve their doubts in favor of disclosure." *Id*.

3. The Second Circuit Court of Appeals has recently reversed a conviction based on a *Brady* violation. See *United States v. Gil*, 297 F.3d 93 (2d. Cir. 2002). In *Gil*, the Panel discussed the government's duty under *Brady* and the requirements to establish a *Brady* violation. *See id*. at 101. Importantly, the Panel in *Gil* noted that the *Brady* material was produced by the prosecution before trial. *Id*. at 105-06. However, the defense was not in a position to read it, identify its usefulness, and use it. *Id*. at 106. The Panel in *Gil* recognized that, "the government runs a certain risk when it turns over so late documents sought by the defense for so long." *Id*.

4. With the teaching of *Gil* in mind, the Defendant requests production and disclosure of all materials potentially favorable to him, including but not limited to the following:

a. Evidence which is exculpatory in nature, including but not limited to information, documents, materials or any other evidence which is even arguably potentially favorable to the defendant; and

b. Evidence which may be used to impeach the credibility of government witnesses, including but not limited to:

(1) plea agreements, promises of immunity, leniency, financial assistance or other forms of

assistance to any witness. *See United States v. Biaggi*, 675 F.Supp. 790, 812 (S.D.N.Y. 1987); *United States v. Taylor*, 707 F.Supp. 696, 703 (S.D.N.Y. 1989);

(2) prior criminal record(s) or other acts of misconduct of any witness. *See United States v. Marshak*, 364 F.Supp. 1005, 1007 (S.D.N.Y. 1973); *United States v. DiLorenzo*, No. S1 94 CR 303, 1995 WL 169003, at *6 (S.D.N.Y. Apr. 10, 1995);

(3) evidence tending to show that any government witness has previously committed perjury;

(4) prior inconsistent statements of any government witness. *See United States v. Peters*, 732 F.2d 1004 (1st Cir. 1984);

(5) confidential files of any government informant(s), insofar as said files contain impeachment material;

(6) "rap" sheets of any government witness, including the criminal records of informant(s);

(7) prior testimony of any government witness which contains inconsistent statements or evidence of a witness's prior bad acts;

(8) materials relating to the character of any government witness, including all law enforcement memoranda, reports, documents, etc., critical of the witness or her credibility. *See United States v. Brumel-Alvarez*, 976 F.2d 1235 (9th Cir. 1992); *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993);

(9) evidence that any government witness has a history of drug or alcohol abuse. *See Taylor*, 707 F.Supp. at 703;

(10) evidence that any government witness has a history of psychiatric treatment;

(11) federal, state or local presentence reports done in connection with any governmental witness. *See United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991);

(12) the parole, probation and/or supervised release status of any government witness;

(13) any promises to a government witness regarding tax or administrative liability, or help in forfeiture proceedings;

(14) money or any other award, including living expenses, medical expenses or transportation expenses, provided to any government witness;

(15) involvement/participation in any witness protection program;

(16) threats or other information provided to any informant(s) or witness(es) regarding the implications of a failure to testify;

(17) reports of threats made against grand jury witnesses;

(18) tax returns of any government witness which indicate that the witness has failed to comply with tax laws. *See United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993); *United States v. Covello*, 410 F.2d 536 (2d Cir. 1969);

(19) reports of polygraph tests, including oral as well as written reports of examiners, and all charts examined in connection therewith. *See United States v. Greichunos*, 572 F. Supp. 220 (N.D.Ill. 1983);

(20) evidence that a government witness was the target of any criminal or civil investigation;

(21) "El Rukn"-type benefits, such as free telephone service, contact and conjugal visits, alcohol, clothing, declination of prosecution for drug use, etc.;

(22) cash payments of any kind, receipts of payments to informants or grand jury witnesses, records of payments for temporary housing of informants;

(23) "negative" exculpatory statements, such as statements by informed witnesses that fail to inculpate defendant. *See United States v. Furlett*, No. 91-CR-258, 1991 WL 255512 (N.D.Ill. Nov. 25, 1991); and

(24) all material which tends to impeach any government witness. *See United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972).

5. The prosecutor has a constitutional obligation to affirmatively gather all *Brady* material, including impeachment material, from all involved investigating agencies: [T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. *Kyles*, 514 U.S. at 437-38. This "duty to learn" includes gathering, and then providing to the defense, all material in the possession of the various law enforcement agencies, which can be used by the Defendant to discredit, impeach and cross-examine the government's witnesses. *See also United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991) (prosecutor must search records for information about witnesses' criminal backgrounds).

6. Upon information and belief, many if not all of the government's witnesses were interviewed by law enforcement agents in connection with this investigation and indictment. Notes are always taken during such de-briefings. Such notes contain fertile grounds for impeachment. The defendant acknowledges receipt of some notes and demands any additional notes. If the notes have been reduced to some type of writing or report, as is usual, the defendant requires and demands these writings and reports. This information must be provided to the defendant immediately if it is to be of any use to him at trial since this information must be investigated.

7. These duties impose on the government an obligation to make such disclosures not only to aid the accused in his preparation for trial, but also to his determination of whether or not to plead guilty. As stated by the Second Circuit in United States v. Avellino: The government's obligation to make such disclosures is pertinent not only to a defendant's preparation for trial, but also to his determination of whether or not to plead guilty. The defendant is entitled to make that decision with full awareness of favorable material evidence known to the government. *United States v. Avellino*, 136 F.3d at 249, 255 (1998) (*citing Tate v. Wood,* 963 F.2d 20 (2d Cir. 1992).

8. The Second Circuit revisited the question of the timing of the government's disclosure in *United States v. Gil*. The panel reminded the government that its Brady disclosures must be made in time for its effective use. 297 F.3d at 105 (quoting In re *United States*, 267 F.3d 132, 142 (2d Cir. 2001). Thus, this information as well as all favorable evidence discovered hereafter, should be disclosed immediately .

9. Although "[t]here is no established procedure for the due process disclosure required by *Brady*[,] [t]he information should be given to the defense as it becomes known to the government . . . ." *Kyles*, 514 U.S. at 440.

10. Due process requires that the defense be given this material in advance of trial so that investigatory leads may be pursued in sufficient time to permit a full preparation of the defendant's case. *See Arizona v. Youngblood*, 488 U.S. 51 (1988); *United States v. Bejasa*, 904 F.2d 137, 140-141 (2d Cir. 1990); *United States v. Agajanian*, 852 F.2d 56 (2d Cir. 1988); *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974); *Grant v. Alldredge*, 498 F.2d 376 (2d Cir. 1974); *United States v. Cobb*, 271 F.Supp. 159, 163 (S.D.N.Y. 1967).

### IV. JENCKS MATERIALS

1. Pursuant to Fed. R. Crim. P. 26.2, the Jencks Act is applicable to pre-trial suppression hearings, sentencing hearings, revocation or modification of supervised release and probation hearings, detention hearings and preliminary examinations.

2. The defendant files this motion for production of Jencks Material and moves this Court for an Order requiring production of Jencks Material, and in support thereof would show the Court as follows:

a. The defendant moves for production of all statements and reports in the possession of the United States which were made by the governments witnesses or prospective witnesses and which relate to the subject matter about which those witnesses may testify, as per Jencks Act, 18 U.S.C. Section 3500 and Rule 26.2, Federal Rules of Procedure.

b. The term "statement" shall include:

i. any written statement made by said witness and signed or otherwise adopted and approved by him/her;

ii. Stenographic, mechanical, electronic or other recording or transcriptions thereof, which are substantially verbatim recited of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement, and;

iii. A statement, however taken or recorded or a transcription thereof, if any, made by said witness to a grand jury.

c. The defendant seeks production of said statements prior to trial for the purpose of judicial economy, to expedite discovery and the trial of this case, and to avoid potential problems on the issue of whether all material has been tendered pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct 1194 (1963) and its progeny. Although a District Court

may not ordinarily compel the disclosure of Jencks Material prior to the conclusion of a witness' direct examination, early disclosure of Jencks Material obviates the trial interruptions and permits the defense counsel to study the disclosures. See, U.*S. v. Campagnoulo*, 592 F.2d 852, 858 n.3 (5th Circuit 1979).

d. The Jencks Act, 18 U.S.C. Section 3500, which provides that no statement made by a government witness shall be discoverable until after the witness testifies, would appear to preclude any pretrial disclosure of *Brady* material. *Brady*, however, may "override" the Jencks Act in highly prejudicial circumstances. See, *U.S. v. Starusko*, 729 F.2d 256, 263 (3rd Circuit 1984) ("… compliance with the statutory statements of Jencks Act does not necessarily satisfy the due process concerns of Brady," citing *Campagnoulo*, 592 F.2d at 858-60); *U.S. v. Hart*, 760 F. Supp. 653 (E.D. Mich. 1991). The rule enunciated in Brady is a constitutionally compelled rule, and Justice Stevens' advice is worth heeding: "Because we are dealing with an inevitably imprecise standard and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve the doubtful questions in favor of disclosure." *U.S. v Aggurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399 (1976).

3. Courts have, on a case-by-case basis, invoked their discretion to require production of *Jencks Act* statements in advance of the trial so that unnecessary delays will not take place during the course of the trial. *See United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974); *United States v. Feola*, 651 F.Supp. 1068, 1139-40 (S.D.N.Y. 1987).

4. Therefore, the Defendant seeks production of the statements prior to trial for the purposes of judicial economy, to expedite discovery and the trial of this case, and to

avoid potential problems on the issue of whether all material evidence has been tendered

pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

## V. MOTION FOR SEVERANCE

1. The defendant moves to have his case severed from the other co-defendant named in

the instant indictment pursuant to Fed. R. Crim. P. 12(b)(5) and 14.

2. Fed. R. Crim. P. 8(b) allows for joinder of defendants in the same indictment.

However, Rule 14 allows for severance and separate trials in appropriate cases:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or

of defendants in an indictment or information or by such joinder for trial together, the

court may order an election or separate trials of counts, grant a severance of defendants or

provide whatever other relief justice requires. In ruling on a motion by a defendant for

severance the court may order the attorney for the government to deliver to the court for

inspection *in camera* any statements or confessions made by the defendants which the

government intends to introduce in evidence at the trial.

3. The defendant will be severely prejudiced if compelled to go to trial with the other

named defendants. It would be difficult for a jury to consider possible evidence of the

other co-defendant's guilty knowledge without letting it influence jury deliberations and

possibly leading jurors to conclude the defendant was guilty by mere association.

4. The Second Circuit has no precise test to resolve a Rule 14 motion, *see, e.g., United

States v. Moten*, 564 F.2d 620, 627 (2d Cir. 1977), but the standard set forth in *United

States v. Kahaner*, 203 F. Supp. 78, 81-82 (S.D.N.Y. 1962), *aff'd*, 317 F.2d 459 (2d Cir.

1963), is often cited:

The ultimate question is whether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon the defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him?

5. The Second Circuit has long recognized that "spillover prejudice" may require severance. *See, e.g., United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993). Such a risk of prejudice is recognized when there is evidence that the jury should not consider against a defendant that would not be admissible if the defendant were tried alone, but is admitted against a co-defendant because they are joined. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. *See Kotteakos v. United States*, 328 U.S. 750, 774-755 (1946).

6. If the Defendant is tried separately, the alleged criminal acts of the codefendants, which have nothing to do with the Defendant, will not be put before the jury. See, *Zefiro v. United States*, 506 U.S. 534 (1993) (prejudice "might occur when evidence that the jury should not consider against the defendant and that would not be admissible if the defendant was tried alone against a co-defendant"); *Gray v. Maryland*, 523 U.S. 185 (1998) (a redacted confession that obviously referred to the defendant is prejudicial); *United States v. Baker*, 70 F.3d 330 (8th Cir.), cert. denied, 520 U.S. 1179 (1997) (severance appropriate where prejudicial character evidence is part of co-defendant's defense; *United States v. Dreinig*, 70 F.3d 850 (6th Cir. 1995) (a severance should have been granted where the co-defendant's defense included prejudicial character evidence

regarding the defendant); *Tifford v. Wainwright*, 588 F.2d 957 (5th Cir. 1979) (a defendant may suffer prejudice if essential exculpatory evidence that would be available to a Defendant tried alone was unavailable in a joint trial).

7. The defendant will suffer prejudice that there is a real danger to fall victim to an impermissible "guilt-by-association" analysis by the jury.

8. There is "cogent reason" warranting severance. If the defendant is tried with the remaining defendants and the defendants statements are read into evidence as a confession and or admission, and if said other defendants do not take the stand, defendant will be denied the right to confront and cross-examine the credibility of the non-testifying defendants, thereby depriving him of his Crawford right to confrontation. *Burton v. United*

*States*, 392 U.S. 123. That fact alone is a "cogent reason" for granting a severance in this matter.

9. Therefore, the defendant, respectfully requests that there be an immediate severance of this case from the remaining defendants.

## VI. INFORMANTS' IDENTITIES

1. The identities of the informants in this case are necessary to the defendant's proper preparations for trial. Insufficient time to prepare and find rebuttal witnesses could violate the defendant's right to a fair trial.

2. The indictment and discovery disclosed to date indicates informants were participants in the actual alleged criminal conduct.

3. Counsel may need to talk to them and be able to investigate the allegations once actually known for each one, biases, and agreements derived from cooperating with the

government for themselves or their family members. Pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) the defendant moves for an order directing the government to disclose the following documents and information regarding any confidential informants;

a. The names and address of any confidential informants;

b. The case number and name of the prosecutions in which any

confidential informants utilized in this case have previously been used as informants;

c. The case names and numbers of any trials or hearings at which confidential informants have testified concerning; prior criminal activity; any payments or rewards received; efforts made to entice others to participate in criminal activity and other purported law enforcement related matters;

d. Any ledger, sheet, or other document which details the sums paid to the confidential informant or his/her family in this and other cases in which said informant assisted the government, and the purpose of each payment;

e. Any information, whether or not memorialized in a memorandum, agent's report of other writing, regarding promises of immunity or leniency, preferential treatment or other inducements made to the confidential informant's cooperation, including, but not limited to:

dismissal or reduction of charges; assistance in matters of sentencing, deportation, parole or probation; or promises or expectations regarding payments for expenses or testimony or eligibility for any award or reward;

f. Information or records concerning notification of potential prosecution, investigation or deportation made by the government to the informant or any member of his family;

g. Any report, document or information which details the criminal activates of the confidential informant which were undertaken by him without the authority or approval of the government, but which the government has elected, formally or informally, not to prosecute;

h. FBI rap sheet, NCIC printout and any other records available to the government reflecting the arrest and conviction history of the informant;

i. Shared Inter-Agency Intelligence Reports referencing activates of the informant;

j. Instances of the use of informant's photograph in any identification procedure;

k. Information concerning prior misconduct by the confidential informant in the performance of his role as an informant , including misconduct that reflects on the lack of candor, truthfulness or law-abiding character of the informant, such as uncharged criminal conduct or fraud;

l. Any "personal files" maintained by the government relating to the confidential informant utilized in this case reflecting on his/her character for truthfulness and lawfulness;

m. Any government agency files or other information revealing matters relevant to the confidential informant's credibility, mental or physical health, or narcotic or alcohol use or other dependency.

4. In *Roviaro v. United States*, 353 U.S. 53, 65 (1957), the Supreme Court reversed a conviction where the trial court denied the defendant's pre-trial motion for disclosure of an informant who was "a participant in and material witness to" the alleged criminal transaction. The *Raviaro* standard for disclosure of confidential informants who play an active as opposed to a passive role in the investigation is not a "fixed rule," instead, the

district court must take into "consideration [1] the crime charged, [2] the possible defenses, [3] the possible significance of the informer's testimony, and [4] other relevant factors." 353 U.S. at 62.

5. In *Roviaro*, the informant "helped to set up the criminal occurrences and had played a prominent part in it[;] [h]is testimony might have disclosed entrapment." 353 U.S. at 64. The Supreme Court held that the "desirability of calling [the informant] as a witness, or at least interviewing him in advance of trial, was a matter for the accused rather than the government to decide."

6. The Eleventh Circuit has held that a defendant is also entitled to disclosure of and access to a confidential informant where "the informant's probable testimony would bear a direct relationship on the defendant's asserted defense." *United States v. McDonald*, 935 F.2d 1212 (11th Cir. 1991).

7. Information relating to a potential witness's credibility is discoverable and material to the defense. See *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989). Particularly relevant is evidence that such an individual is undergoing psychiatric treatment (see *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983), is otherwise physically or emotionally impaired (see *United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974), or is addicted to or abuses drugs or alcohol. See, *United States v. Collins*, 472 F.2d 1017 (5th Cir. 1972); *United States v. Fowler*, 465 F.2d 664 (D.C. Cir. 1972); *United States v. Romano*, 482 F.2d 1183 (5th Cir. 1973).

8. In the event the government should decline to identify these informants, the defendant would request time to move to dismiss the indictment or your deponent may request an in camera review.

20

## VII. PRESERVATION OF ROUGH NOTES

1. The Defendant moves the Court for an order requiring all government agents and officers who participated in the investigation of the Defendant to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records. This motion is made so that the trial court can determine whether disclosure of the notes is required under Brady, Agurs, Giglio, the Jencks Act (18 U.S.C. § 3500), Fed.R.Crim.P. 26.2, and/or the Fifth and Sixth Amendments of the United States Constitution.

2. This motion puts the government and its agents on notice that, from this point on, any and all rough notes referred to above should be preserved. Any destruction of notes after this request for preservation cannot be claimed to have been made in good faith. *See United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989); *United States v. Elusma*, 849 F.2d 76 (2d Cir. 1988); *United States v. Sanchez*, 635 F.2d 47 (2d Cir. 1980); *United States v. Bufalino*, 576 F.2d 446 (2d Cir. 1978).

3. The Defendant also requests that this Court direct the government to preserve notes made by government witnesses, including state and local authorities, in the event they later became discoverable as either the defendant's statement, or that of another witness. *United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995).

4. Simply labeling notes as "rough notes" does not minimize the government's duty to produce them. For example, in *Williams v. United States*, 338 F.2d 286 (D.C. Cir. 1964), the court stated that notes containing abbreviations, idiomatic language or phrases set off in quotations may be deemed to be a substantially verbatim recital of the witness' statement.

5. In *United States v. McKeever*, 271 F.2d 669 (2d Cir. 1959), this Circuit held that notes made by an FBI agent, although not technically discoverable under the Jencks *Act* as an exact recital of the witness' statement, could still be discoverable. Factors to be considered are the extent to which the language comports with that of the witness, the length of the report in comparison to the witness' utterances and the lapse of time between the interview and the transcription. *Id.* at 674-75, *citing Palermo v. United States*, 360 U.S. 343, 355 (1950).

6. In the event it is doubtful whether such notes are subject to discovery, the government should submit them to the court for an *in camera* determination to determine whether they qualify as witness statements. Scotti, 47 F.3d at 1249.

## VIII. RULES 404, 608 & 609

1. Pursuant to Fed.R.Crim.P. 12(b)(4), (d)(1) & (2) and Fed.R.Evid. 104(a) and 404(b), the defendant respectfully requests that the government notify him of any evidence that the government contends would be admissible under Fed.R.Evid. 404(b). The defendant also requests disclosure of all evidence of prior bad acts that the government intends to use for impeachment of the defendant, should he testify at trial, pursuant to F.R.E. 608(b) and 609(a).

2. In order to permit the defendant the opportunity to file appropriate motions prior to trial, he requests that he be fully apprised of "evidence of other crimes, wrongs, or acts" or transactions involving the defendant which are outside the scope of the indictment and which the government will seek to introduce to demonstrate "motive, or absence of mistake or accident." Fed.R.Evid. 404(b).

3. The Defendant should be put on notice of the exact nature of this evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the government asserts that admissibility rests. By so notifying the Defendant in advance of trial, he can file the appropriate motion(s) *in limine* prior to trial and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the prosecution.

4. The pretrial determination of this evidentiary question will serve the smooth operation of the trial, eliminate possible extraneous objections and assist both the government and defense counsel in the presentation of evidence.

5. The Defendant also requests, pursuant to Rules 608 and 609, pre-trial disclosure of any and all evidence the government intends to use to impeach the Defendant's credibility if he should choose to testify. In the event the government intends to use such evidence, the Defendant requests a pretrial hearing to determine the admissibility of such evidence.

6. Rule 608(b) allows use of specific instances of misconduct against a witness. In the event the government intends to use specific instances of misconduct against the Defendant if he testifies, it is requested that such instances be disclosed prior to trial.

7. Due process also requires that such material be provided to the defense prior to trial to aid the Defendant in deciding whether to proceed to trial or to accept a plea. The Second Circuit has suggested that this information should be produced at this stage in the proceedings. *See United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998).

8. Fed.R.Evid. 609 allows for use of certain prior convictions to impeach the credibility of the Defendant, should he testify at trial. The Defendant requests notice of any intent to use such information.

9. The defendant requests a list of potential witnesses at least three (3) days prior to trial.

## IX. DEMAND FOR BILL OF PARTICULARS

1. The defendant requests an Order of this Court pursuant to Rule 7(f) FRCP requiring the Government to furnish him with a written bill of particulars as requested herein.

2. Each of the matters requested herein are absolutely essential to enable the Defendant (1) to prepare for trial, (2) prevent surprise at the time of trial, and, (3) to interpose a plea of double jeopardy in the event of a subsequent prosecution for the same offense. *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988); *United States v. Brotnovsky*, 820 F. 2d 572, 574 (2d Cir. 1987). The particulars requested are also necessary because the allegations set forth in the Indictment are conclusory, vague, overly broad and fail to set forth with specificity the time, place and manner in which the defendant committed the offenses charged.

3. It is submitted that each of these items requested herein come well within the scope of Rule 7(f) FRCP. In view of the fat that defendant requests particulars any argument that the requests are evidentiary in nature would be unfounded.

4. Without answers to the request for the specifics in this case it is impossible to determine whether any defenses are available.

5. The 1966 Amendment of Rule 7(f) FRCP eliminated the requirement of a showing of cause thereby encouraging a more liberal attitude by the Courts towards Bill of Particulars. See, *United States v. Smith*, 16 F.R.D. 372 (W.D. Mo. 1954); *United States v. Bortnovsky*, supra. This is true where the indictment is so general that the counts do not advise the defendant of the specific acts of which he is accused. *United States v. Torres*, 901 Fed 2d 205, 234 (2nd Cir. 1990).

6. Whether a bill of particulars should be provided and its specificity are matters within the sound discretion of the court. *Wong Tai v. United States*, 273 U.S. 77, 82 (1927); *United States v Torres*, 901 F. 2d 205, 234 (2nd Cir.), cert denied, 498 U.S. 906 (1990) (citing *United States v Panza*, 750 F. 2d 1141, 1148 (2nd. Cir. 1984).

7. It is respectfully submitted that the Defendant also needs a Bill of Particulars to protect his right to a jury trial and to establish his potential sentencing exposure pursuant *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Accordingly, his sentencing liability, if any, may be limited to whatever happened between the dates he entered and exited the conspiracy.

8. Because of the United States Constitution's requirements of due process and to a jury trial, its prohibition against double jeopardy, the United States Code's conspiracy principles, and the United States Supreme Court's *Apprendi* decision requirements for sentencing accuracy, it is respectfully requested that this Honorable Court direct the government to furnish the Defendant a Bill of Particulars as to the following particulars:

a. The names of all persons whom the government will claim at trial were coconspirators, including un-indicted co-conspirators, and whether they are in federal custody or protective custody;

b. Whether or not any individual present during the commission of the alleged overt acts was acting for the government, and the names, or names they used or similar identification, or any such person;

c. The names, to the extent known, of any persons present when the overt and substantive acts allegedly took place;

d. The date, to the extent known, when the conspiracy was alleged to have opened, the dates, to the extent known, when each defendant joined the conspiracy, and the date on which the conspiracy ended, including the dates when each defendant left the conspiracy, if different than the alleged ending date, *United States v. Feola*, 651 F. Supp, 1068, 1134 (S.D.N.Y. 1987), aff'd 875 F 2d 857 (2nd Cir.), cert. denied, 493 US 834 (1989);

e. The quantity of contraband distributed and possessed by each defendant during the course of the alleged conspiracy to the extent that this information will be presented by the government at trial;

f. Identification of individuals described as 'others' in the Indictment who are known to the government but not identified in the Indictment;

g. Whether or not there were any other persons who aided or abetted the defendant in connection with the alleged offense, and whether the government intends to prove that the defendant acted as principal or accomplice or both;

h. The substance of the conduct attributable to the defendant with respect to the above charge;

i. The names and addresses of all prosecution witnesses;

j. Whether the arrest of the defendant was pursuant to a warrant, and if so, then particularizes the contents of said warrant;

k. An itemized description of any property taken from the defendant or an accomplice during the investigation of the alleged offense)s, the person(s) or place(s) from which taken, the person(s) effecting such seizure(s) , the date(s) of such seizure(s), and whether such seizure(s) was pursuant to a warrant;

l. A description of any and all instrumentalities allegedly used by the defendant or an accomplice during the commission of the offense charged and the exact current location of said items;

m. The theory of prosecution upon which the offense charged is based;

n. The specific dates and actions by the defendant which the government contends constitute overt acts for the purpose of the conspiracy;

o. State whether an express conspiracy existed. If so, state whether it was written or oral and its substance, including duration. If oral, identify each party to it, the exact time, date and location where it was made, and the name and address of each person present. If any document contains any evidence of the alleged conspiracy, or embodies it, furnish a copy of that document.

p. With reference to the alleged agreement, state the nature of the agreement, if there was more than one agreement and the nature and participants in each;

q. Identify whether the defendant "distributed" the alleged controlled substance, exact dates, to whom and the amount.

r. Identify any other phone conversations the government intends to use involving the defendant, JODIA CAMPBELL:

a. Phone number

b. Date

c. Alleged conversation or contents

s. Set forth each overt act of the alleged conspiracy in which it is claimed that the defendant participated or of which he was aware.

t. Set forth the time, date and place of each overt act allegedly committed in furtherance of the conspiracy. Specify who was present at, and any conversations had during such claimed overt act.

u. State the manner, date, time and place that the defendant became a member of the conspiracy. State whether it is claimed that he conspired directly with any member of the conspiracy and identify who that person is. Describe the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.

v. State for each delivery of cocaine the volume, weight and quantity, how many deliveries took place and how the defendant is connected to these deliveries. When, where and how it was to be delivered, to whom it was delivered, the volume and weight and quantity that was planned to be distributed and the overt acts that connect the defendant to these actions.

7. Without the above specifications, the defendant is without the ability to prepare for trial. The knowledge of others, their part, and the defendant's involvement is monumental to the preparation of any defense.

### X. DISMISSAL OF INDICTMENT

1.      The U.S. Constitution creates a federal government of limited powers.  Article I, Section Eight sets out some of those powers.  The third clause permits Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const., Art. I, §8, cl.3.

2.      In *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court struck down the Gun-Free School Zone Act of 1990, finding the Act exceeded Congress' authority to regulate Commerce among the several states.

3.      In *Lopez*, the Court identified three categories of activity that Congress was permitted to regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce.  Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.  Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.,* those activities that substantially affect interstate commerce.

*Id.* at 558-559, (internal cites omitted).

4. Similar to the findings in *Lopez*, Congress has not sought to regulate the use of the channels of interstate commerce.  Nor has Congress attempted to prohibit the interstate transportation of a commodity through the channels of commerce or a thing in interstate commerce.  *Id.* at 559.

5. The statute must regulate an activity that substantially impacts interstate commerce in order for the instant offense to satisfy Congress' limited authority to criminalize conduct under the Commerce Clause.  *Id.* at 559.

6. In *United States v. Morrison*, 529 U.S. 598 (2000), the Supreme Court invalidated § 13981 of the Violence Against Women Act of 1994, holding the Commerce Clause did not provide Congress with authority to enact that provision.  That section

permitted individuals to commence a civil act based on crimes of violence motivated by gender.

7.      In *Morrison,* the Court expanded on those factors considered in *Lopez* that must be evaluated when determining whether the Congressional action properly regulated an activity that substantially impacts interstate commerce.  These include whether the criminal statute had any connection to commerce or any sort of economic enterprise; whether the statute contained an express jurisdictional element; whether Congress included findings in the legislative history regarding the effects upon interstate commerce; and whether a link between the prohibited conduct and its substantial effect on interstate commerce was attenuated.  *Id.* at 610 - 612.

8.      Unlike *Lopez*, the Violence Against Women Act of 1994 was supported by numerous findings addressing gender violence and its impact on its victims and families.  *Id.* at 614.  However, such legislative history did not save an otherwise unconstitutional statute.

9.      Here, the defendant is charged with Sex Trafficking of Minors in violation of 18 U.S.C. § 1591(a)(1), inter alia.  This statute was promulgated by Congress when it enacted the Trafficking Victims Protection Act (TVPA) of 2000.  The statute prohibits certain criminal conduct that occurs within the territorial jurisdiction of the Untied States.  Congressional findings for TVPA are found in 22 U.S.C. § 7101, et seq.  Yet, neither these findings nor any other analysis permits the instant statute to withstand constitutional scrutiny.

10. As the Court in *Lopez* concluded:

>               [t]o uphold the Government's contentions
> here, we would have to pile inference upon

> inference in a manner that would bid fair to
> convert congressional authority under the
> Commerce Clause to a general police power
> of the sort retained by the States.

514 U.S. at 567.

11. The same reasoning applied in *Lopez* and *Morrison* compels the same conclusion in the instant case. The primary purpose of the statute is not economic but law enforcement. Given that Congress lacks a "plenary police power," *Lopez*, 514 U.S. at 566, it may not properly criminalize wholly intrastate activities.

12. The defendant asks this Court to enter an Order dismissing the indictment based on the unconstitutionality of 18 U.S.C. § 1591(a)(1).

## XI. DISCOVERY AND INSPECTION

### I. DISCOVERY, DISCLOSURE AND INSPECTION

1) The government provided voluntary discovery. Mr. Brown does not request duplicate discovery. However, to the extent the government has not provided discovery, Mr. Brown requests the following:

#### A. Statements

1. Any written, recorded, oral or observed statement of any defendant, or attributed to any defendant, including notes, summaries, or memoranda concerning such statements, specifically the recordings of the phone calls where the defendant is alleged to have been a party of in its original language as well as transcripts;

2. Any transcripts of testimony relating to this criminal action, given by any defendant, or agent or employee of any defendant before any grand jury;

3. Any hearsay evidence intended by the government to be introduced at trial. See Rule 807 –Residual Exception.

**B. Evidence to establish conspiracy**

1. Each and every statement of a co-conspirator which will be relied upon by the government to demonstrate the requisite existence of the conspiracy charged.

2. Provide the same information requested in paragraph A(1) for any written or recorded statements made by any co-defendant or alleged coconspirator whether indicted or not. Describe specifically each statement which will tendered for admission as an alleged co-conspirator hearsay exception pursuant to Fed. Rule Evid. 801(d)(2)(E). Provide the same information as requested in paragraph A(1) for each such statement.

**C. Scientific**

1. Any report, whether written or oral, or document or portion thereof, concerning any physical or mental examination, or scientific test or experiment relating to this case.

**D. Identification**

1. Any visual or audio identification procedures utilized in this case, specifying the procedure, participants and circumstances; any visual or audible representation of a person used for identification purposes.

2. Results of the use of any television or video cameras commonly called "pole cameras " which are placed on utility poles to covertly observe a certain public area.

**E. Law Enforcement Documents**

1. All police investigative reports, complaints, evidence, logs, interdepartmental memos, or other documents maintained by any state or local police or law enforcement agency relevant to any of the actions of conduct referred to in the indictment or considered by the

grand jury in bringing the within indictment, or which are intended for use at trial or to be relied upon at trial in the presentation of the case or obtained for use in the examination of any defendant and any or witness. This request includes criminal history information related to any defendant and any potential witness, and any documents concerning any alleged offenses in the underlying indictment;

2. All investigative reports or documents prepared by the government or any agencies or person operating on its behalf relating to the conduct charged in the present indictment or considered by the grand jury in bringing the indictment or which are intended for use at trial.

3. Any documents concerning the present indictment or the investigation leading to the indictment prepared or maintained by any state correctional facility, local jail, or State Department of Correctional Services or similar administrative agency having jurisdiction over places where any of the defendants or alleged conspirators referred to in the indictment have been confined.

**F. Summaries of Logs of Conversations**

1. All monitoring logs, or summaries or other documents concerning intercepted conversations or observed conversations that were not previously provided.

**G. Third Party Documents**

1. Any documents obtained from any banks, financial institutions, or the like relating in any way to the indictment or the investigation which lead up to the indictment.

2. Any document obtained from any utility companies, home service providers or the like, relating in any way to the indictment or the investigation which lead to the indictment.

3. Any documents obtained from any common carriers whether for packages, information, data or persons including telephone records or the like relating in any way to the indictment or the investigation leading up to the indictment.

4. Any documents obtained from any venders, law firms or any other third parties relating to the indictment or the investigation leading up to the indictment.

**H. Other Documents**

1. Any other documents in the possession, custody or control or with which by the exercise of due diligence could come into the control of the government that were prepared in connection with this case or are intended to be used in the trial of the defendants.

**I. Tapes, Photographs**

1. Copies of all video or audiotapes, CD's, DVD's, Flash Drives or any other electronic storage medium made in connection with the investigation which were not provided.

2. A precise description of the form and location of the original recordings, and the process by which the current copy was created.

3. Any photographs made in connection with this case.

4. Any charts, graphs, maps or drawings related to the investigation and prosecution of this case.

5. Reports of instances when audio or visual equipment failed to work properly due to conditions beyond the control of the operators.

**J. Transcripts**

1. Verbatim transcripts of all conversations relevant to the case that were not previously provided.

**K. Physical Evidence**

1. All physical evidence collected or seized in connection with the case, including copies of all property capable of being photocopied or reproduced. This request includes any seized correspondence. The source and date and time of recovery, as well as the authority under which the property was obtained must also be disclosed.

**L. Favorable Information**

1. All material evidence or information, whether admissible at trial or not, whether regarding facts or occurrences, known to the government or which could become known upon due diligent inquiry to those under the government's direction or control, which is in any way favorable to the defendant, whether by detracting from the government's case or the credibility of the prosecution's witnesses, or supportive of the positions urged, or likely to be urged by any defendant at any stage of the proceedings.

2. Without limiting the prosecutor's duty to disclose favorable material, the defense suggests that the following, if in existence, should be disclosed;

i. Any record of previous arrests or convictions or any other evidence or information demonstrating participation in dangerous, vicious, immoral or criminal behavior on the part of any persons intended to be called as witness by the prosecutor.

ii. Any statements known to be false or erroneous or conflicting, made to a public servant engaged in law enforcement activity or a grand jury or court, by persons intended to be called as witnesses. Any statements, records or information indicating that any witness has given contradictory or deceitful information in the course of the investigation of this case.

3. Any information indicating that any prospective witness has given information inconsistent or materially different from information received from other more reliable sources.

4. Names and addresses and statements of any persons interviewed on behalf of the government or who are known to have been witnesses to the events underlying the indictment whom the government does not intend to call as witnesses.

5. The existence of any government agents or information or cooperating individuals in this case and any representation, offer, agreement, or understanding regarding any past, present, or future benefit to such persons as a result of or in cooperation with the prosecutor.

6. Any information to the effect that the instant prosecution is based on or derived from evidence acquitted as a result of governmental action violative of Constitutional Standards. This request expressly encompasses any information which might affect the Court's decision on a suppression issue in a fashion favorable to the defendant.

7. Any information or documentation reflecting misidentification or non-identification (by a person, voice, photograph or otherwise) of any defendant as a participant in the alleged offenses.

8. Any information or documentation which indicates that the defendant did not actually possess the alleged controlled substances or other items.

9. Any other record or information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the prosecution's evidence or which arguably could lead to such records or information.

**M. Impeaching Information**

1. The defense also requests information which could be utilized for the impeachment of prosecution witnesses, including, specifically, the disclosure of any of the following within the possession, custody or control of the prosecution or which, with due diligence could become known to the prosecution:

i. Any records or information revealing prior convictions or juvenile adjudications attributed to each witness to be called by the government, including but not limited to relevant "rap" sheets. Any records, including police personnel records, or information revealing prior misconduct or bad, vicious, or immoral acts on the part of any witness.

ii. Any consideration or promise of consideration which obtains with respect to any witness intended to be called by the prosecution including but not limited to, leniency, favorable treatment, assistance with respect to any pending legal proceeding, claim for reward or fees, including witness fees or special provisions for protection, for clothing, shelter, transportation or other benefits, or anything else which arguably could reveal an interest, motive, or bias of the witness in favor of the prosecution or against the defendant or act as an inducement to testify or to color testimony.

iii. Any threats, express or implied, direct or indirect, or any other coercive measures directed against any witness, such as threats of criminal prosecution or investigation or potential prosecution, any probationary parole, deferred prosecution or custodial status of the witness or any civil, tax court, court of claims, administrative or other pending potential legal disputes or transactions with the prosecution over which the prosecution has a real, apparent or perceived influence.

iv. Any information as to any prospective prosecution witness having a history of mental or emotional disturbance.

v. The existence and identification of each occasion on which any witness has testified before any court, grand jury, or other tribunal or body in relation to the defendant, the investigation or the facts of this case.

vi. the existence and identification of each occasion on which each witness who was or is an informer, accomplice and/or co-conspirator has testified before any court, grand jury or other tribunal or body.

vii. Any instances where potential witnesses were the subject of searches or were arrested then released and not charged with any crimes.

2. The same information as requested in paragraphs (i) through (vii) above is also requested with respect to each non witness declarant whose statements may be offered in evidence.

**N. Alleged Prior Misconduct**

1. Any alleged criminal or immoral conduct on the part of any defendant intended to be used against any defendant on the government's direct or rebuttal case, or in the examination of any defendant who might testify at trial.

**O. Expert Testimony**

1. Pursuant to F.R.Cr.P. 16(a)(1)(E) and Rule 12; the Defendant demands a written summary of expert testimony that the government intends to use in its direct case; said expert's qualifications, the basis of the expert's opinion, whether or not the expert files a report, and a synopsis of their expected testimony.

**P. Grand Jury Transcripts**

1. The Defendant moves this Court, pursuant to the Federal Rules of Criminal Procedure 6(e)(3)(c)(c)(i), for disclosure of transcripts of all testimony before and all exhibits

considered by the Grand Jury that indicted him. The Court should order production of the transcripts because the defendant has particularized need for the transcripts as outlined below which outweighs the Grand Jury policy of secrecy. *See, for example, Pittsburgh Plate Glass Co. V. United States*, 360 U.S. 395 (1959); *Dennis v. United States*, 384 U.S. 855 (1966).

2. Specifically, the Defendant is the subject of an indictment that contains very little, if any, information and does not state any particular acts, overt acts, or claims of dealing with any specific person or persons or dates and specifications of any alleged commission of conspiracy. The transcripts and evidence before the Grand Jury are absolutely necessary in order to further prepare a defense to these charges. The Bill of Particulars and the disclosure requested herein is that the defendant be informed of the evidence that actually exists against him so that he can review the same with counsel and make an intelligent decision as to what procedure and how he should go forward in this action, for these reasons the Grand Jury transcripts and evidence should be disclosed to the Defendant.

**S. Discovery of Co-Conspirator Statements and a Hearing Pursuant to FRE 104**

1. The defendant requests the production of co-conspirator statements which the Government intends to introduce at trial since such statements will be attributed to the defendant under FRE section 801(d)(2)(E).

2. Your deponent would also request a hearing pursuant to FRE 104 to determine whether the Government can make a sufficient showing that a conspiracy, as opposed to a mere buyer-seller relationship, existed and that the statements to be introduced are admissible under the co-conspirator hearsay exception.

3. Pursuant to *Bourjaily v. United States*, 483 U.S. 171, the defendant requests that the court hold a pre-trial conspiracy hearing to assess the foundation for the introduction of any statements made by alleged co-conspirators which the government will seek to introduce against the defendant at trail (see also seek suppression under 18 U.S.C. 2518(10)(a) and *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978).

**T. Discovery with Respect to FRE 403, 404(B) and 609**

1. In order for the defendant to determine whether or not grounds exist for objection, the defendant requests that the Government be required, in accord with Fed. R. Crim. P. 12(d), to disclose any evidence intended to be offered at trial that would cause undue surprise or prejudice, evidence of other crimes, including prior convictions or proof of prior commission of other offenses, wrongdoing or acts in their direct case to impeach the defendant, intended to prove character, or evidence of prior convictions the government intends to use for purposes of impeachment of the defendant if he chooses to testify.

## XII. SUPPRESSION OF STATEMENTS

1.     Upon information and belief, based upon review of the discovery materials provided by the government, the defendant was interviewed by TFO Brian Tucker and SA Barry W. Couch on or about August 6, 2013.  Given the nature of the interview and the contents of the report summarizing statements allegedly made by the defendant, it is likely the government will seek to introduce the defendant's statements against her at trial.  It is also likely that the government has already utilized the defendant's alleged statements against her before the grand jury.  The defendant hereby specifically moves to suppress any and all statements obtained by the government or its agents.  The statements contained within the report by Tucker and Couch are not fair and

40

accurate recordings of the defendants actual statements.  They are at best a summary or opinion by the agents as to what was actually said by the defendant.  The statements attributed to the defendant are not recorded in accurate chronological order, are recorded out of context, and/or were never actually stated by the defendant.  The statements do not accurately record the preceding questions and are recorded in a way to cause the defendant to be unfairly prejudiced.  If the statements are introduced in to evidence against the defendant, the defendant would be unlawfully pressured to give up her right to remain silent in order to "set the record straight" as to what was actually stated.  Given the current state of technology to record video and audio of any conversation with devices as small and accessible as cell phones, it is inexcusable to not require that statements that are collected in preparation of potential criminal prosecution be recorded. The days of simply relying on a law enforcement officer's recollection of what was said by a defendant are no longer necessary.

## XIII. MOTION FOR A CONSPIRACY HEARING

1. Upon information and belief, the government may seek to introduce at trial statements of the alleged co-conspirators pursuant to F.R.E. 801(d)(2)(E). Pursuant to *Bourjaily v. United States*, 483 U.S. 171, the defendant requests that the Court hold a pretrial conspiracy hearing to assess the foundation for the introduction of any statements made by alleged co-conspirators which the government will seek to introduce against the defendant at trial (see also seeks suppression under 18 U.S.C. 2518(10)(a) and *Franks v Delaware*, 438 U.S. 154 (1978).

## XIV. IN CAMERA REVIEW OF PRE-SENTENCE REPORT OF GOVERNMENT WITNESSES

1.      The defendant asks the Court to conduct an in camera review of the pre-sentence investigation report of any government witness (who had been charged with Federal/State crimes) to determine if such report contains exculpatory or impeachment material. See *United States v. Moore*, 949 F.2d 68 (2d Cir. 1991) when a co-defendant requests the pre-sentence report of an accomplice witness, the district court should examine the report in camera to determine if there are any statements made by the witness that contain exculpatory or impeachment material); see also, *Giglio v. United States*, 405 U.S150 (1982); *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Carreon*, 11 F.3d 1225 (5th Cir. 1994); *United States v. Wilson*, 930 F.2d 616 (8th Cir. 1990); *United States v. Trvino*, 556 F2d. 1265, 1271 n.7 (5th Cir. 1977); *United States v. Beckford*, 962 F.Supp. 780, 800 (E.D. DA 1997). This includes files of co-defendants as well. *United States v. Gallagher*, 99 F.3d 329 (9th Cir. 1996). A failure to disclose drug use and dealing by the government's witnesses constitutes reversible error. *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995).

2.      In support thereof, the defense alleges that the prosecution is likely in possession of pre-sentence reports for government witnesses that the government has indicated will testify against the defendant at trial, which witnesses are key witnesses in the government's case against the defendant.

3.      Defense counsel has reason to believe that the pre-sentence investigation reports contain valuable impeachment evidence and that they contain statements of the government witnesses that may be inconsistent with prior statements of error since previously made to law enforcement officials.

4.      Furthermore, defense counsel believes that the pre-sentence reports contain statements made by the government witnesses that are inconsistent with the government's witnesses prior statements to law enforcement officials that he had no time used narcotics, which prior inconsistent statements are material and likely to affect the tier of fact.

## XV. LEAVE TO MAKE FURTHER MOTIONS

1.      The Defendant has endeavored to encompass within this motion all possible pre-trial prayers for relief. It is respectfully requested that the Court grant leave to apply for such further and future relief as may be deemed justified, should the facts and circumstances not now within the defense's knowledge indicate that such additional motions are warranted.

2.       Wherefore, I respectfully request this Court to grant relief requested as well as such other and further relief as to the Court may seem just and proper.


Dated: December 21, 2014
Rochester, New York
Respectfully submitted,
/s/ Avik K. Ganguly
Ganguly Brothers, PLLC
2024 West Henrietta Rd., Suite 3D
Rochester, New York 14614
585.232.7747